LEIGH M. CLARK, Retired Circuit Judge.
Appellant-defendant was convicted of robbery in the third degree and sentenced to imprisonment for eighteen years at a sentence hearing at which it was shown that defendant had previously been convicted of grand larceny. In this circumstance, the prescribed limits of punishment for the Class C conviction of robbery in the third degree, as raised by the other felony conviction, are the limits prescribed for a Class B felony of “not more than 20 years nor less than 2 years.” Alabama Criminal Code, § 13A-5-6.
According to the testimony of two employees of “Bill’s Men’s Wear” in Huntsville, one a male and the other a female, they saw defendant while in said store on September 30, 1982, attempt to leave the store with two pairs of pants constituting merchandise of the store that defendant had stuffed under his shirt. As defendant was in the act of going out the door, the female employee attempted to stop him, and he “hit” her in the stomach twice and “threw” her to the floor. The defendant testified that he knew nothing about what happened at Bill’s, that he had never been at the store, and that he had never seen the mentioned female employee prior to trial. *114 This brief summary of the evidence is sufficient, we think, to show that there is no merit in appellant’s first contention for reversal that the State did not prove “beyond a reasonable doubt that appellant was guilty of robbery in the third degree.” We realize that as argument it could have appealed to some jurors. We may have some question whether defendant was the person who committed the alleged robbery, but we have no reason to believe that the jurors were not unanimously convinced by the evidence beyond a reasonable doubt that defendant was such person. There is no contention by appellant to the effect that the incident involved did not constitute robbery in the third degree, which is committed “if in the course of committing a theft” one “Uses force against the person of the owner or any person present with the intent to overcome his physical resistance or physical power of resistance.” Alabama Criminal Code, § 13A-8-43(a)(l).
Appellant states the second issue presented in his brief as follows:
“Whether or not the trial court erred in denying Appellant’s motion to exclude and motion to suppress. (R.O.A. pp. 136-138). Also, whether or not the trial court erred in not allowing Appellant time to have two witnesses testify about whether or not the key investigator in the case took Appellant’s picture to the victim while Appellant was at the police headquarters. (R.O.A. pp. 73, 74, 75).”
It is to be seen therefrom that the issue is two-pronged. It apparently pertains to a highly confusing feature of the trial, which is not clarified by the record proper or the transcript of the proceedings in the trial court. Defendant’s written motion to suppress and his written motion to exclude are directed at “the pre-trial identification(s) made by the two witnesses” who in their testimony on behalf of the State testified that defendant was the person who took the two pairs of pants from the store and hit the female employee as she tried to stop him at the door. The colloquies that procured the oral denial of defendant’s motion to exclude and defendant’s motion to suppress tend to environ the question then ruled upon with vagueness, but it is clear that testimony was introduced in the case showing that prior to defendant’s arrest on October 5, 1983, both witnesses identified defendant from one of some pictures of different individuals of substantially the same classification as to age and race as the person described by the eyewitnesses. Before the trial commenced and throughout the course of the trial, there were many references and profuse testimony as to photographs that had been shown the two eyewitnesses separately by law enforcement authorities in their effort to determine the identity of the person who had committed the robbery. Much of such references and testimony was in camera. Some of it consisted of utterances of attorneys or witnesses that apparently overlapped, or were overlapped by, utterances of other attorneys or witnesses so that it becomes extremely difficult for us to determine with reasonable certainty what particular photograph or photographs or particular groups of photographs constituted the photograph or photographs then referred to in the transcript of the proceedings. The trial judge had a better opportunity to make such determination, by reason of the fact that he could observe the body motions of the attorneys and witnesses as they spoke with reference to the photographs. Notwithstanding the confused state of the proceedings as they appear in the transcript, it is reasonably clear to us that defendant’s second issue pertains essentially to whether the trial court committed reversible error in ruling against defendant as to a request by his attorney that defendant be allowed an opportunity to present testimony by one or two officers, naming them, that, during the time defendant was first brought to jail and was in the process of being “booked,” Officer Dana Parker went with a photograph to Bills’ Men’s Wear and returned therefrom before defendant was actually booked. It is reasonably clear to us that by such proposed testimony defendant planned to corroborate the previous testimony of the defendant to the effect that he was not actually *115 “booked” until after he was photographed at the jail and two officers had taken the photograph taken of him there to Bill’s Men’s Wear where it was shown to one of the eyewitnesses for her identification thereof as the robber, and thereafter the defendant was promptly “booked.” The following is a pertinent part of the defendant’s testimony:
“Q. And when you went in the back, then what happened first? Did they ask for your picture first?
“A. Yeah. He asked me for my picture. I stood up against the wall and he took my picture.
“Q. And what kind of picture was it?
“A. Black and white.
“Q. Black and white picture?
“A. Yes.
“Q. Then what was done with the picture?
“A. Well, they took it over there to Bill’s and showed it to the lady.
“Q. And how do you know this is what happened?
“A. Because they took my picture — him and this other policeman took my picture and they went over there and they come back and said, “Yeah, we have got you, you are under arrest.”
The action of the trial court as to the request of defendant’s counsel that he be given an opportunity to present by one or more of the named officers testimony tending to corroborate the testimony of defendant as quoted above is in the following part of the transcript:
“MS. TESNEY [Defendant’s Attorney]: Your Honor, I call another witness. He is on his way.
“THE COURT: Who is that, please?
“MS. TESNEY: Gordon Petty.
“THE COURT: From where?
“MS. TESNEY: The Police Station.
“THE COURT: Ladies and gentlemen, if you will, go to the jury room. We will wait approximately five minutes.
“(Jury left the Courtroom.)
“MS. TESNEY: Gordon said he was trying to get Officer Turner to come also. I asked him to ask him. I don’t know if he will bring him or not.
“THE COURT: Do you have any other witnesses other than Gordon Petty?
“MS. TESNEY: No, sir.
“(At this time, a brief recess was had.) “THE COURT: Note for the record that we have waited sufficient time for the witness to come from the Huntsville Police Department, which is approximately a block and a half from the Courthouse, and that he has not arrived, and we sounded in the hall for him; that Ms. Tesney on behalf of the defendant has asked for additional time and the Court states in view of the fact that Mr. Petty is not under subpoena to this Court at this time it is denied.
“(At this time, a brief off-the-record discussion was had.)
“THE COURT: Let Ms. Tesney make a showing for the record as to what she would seek to show through this witness.
“MS. TESNEY: We would seek to show through Officer Gordon Petty and through Officer Turner at the Huntsville Police Department that during the period of time to which Detective Parker testified he had been with David Otey he in fact left David Otey for a period of about an hour while Mr. Otey contacted me by telephone and talked with me as he sat beside Gordon Petty; and Gordon Petty also talked with me on the phone during that period of time. This was prior to David being taken upstairs to be booked into jail.
“THE COURT: What would that tend to prove on behalf of the defendant?
“MS. TESNEY: Tend to prove that Officer Parker, he did take a photograph that he had taken to Bill’s Men’s Wear or stated to the defendant that he had done so.
“THE COURT: All right. Further in regard to the Court’s ruling based upon the showing that has been made, I would not allow that testimony in face of an objection in view of the fact that it would be an offer to impeach the defendant’s *116 own witness of Officer Parker, who was called and vouched for by the defendant. “Are you ready to argue the case?
“MS. TESNEY: I would like to recall Officer Parker if I may.
“THE COURT: All right. Mr. Nunley, bring the Jury out.
“(The jury returned to the courtroom).”
We realize that we are not in as good a position as the trial judge was to pass upon the importance of the request of defendant’s attorney for more time to procure the presence in the courtroom of Officer Petty or Officer Turner in order for one or both of them to testify on the subject of whether the photograph taken of defendant when he was first brought to the jail after his apprehension was taken by one of the officers to Bill’s to be viewed by one or both of the eyewitnesses to the robbery. Nor are we as well informed as was the trial judge as to any reason for the almost immediate availability as a witness of Officer Petty and Officer Turner. However, in the absence of more information on the subject than the transcript affords us, we are unable to conclude that any testimony from one of such officers in corroboration of the defendant’s testimony on the point would not have been of some substantial value to defendant. It may well be that with superior knowledge of the trial judge as to all the circumstances, he was correct in stating that “in view of the fact that Mr. Petty is not under subpoena to this Court at this time” defendant’s request for more time to produce Officer Petty should be denied, but the transcript fails to convince us now of its correctness as one of the stated reasons for the denial of the request. Furthermore, we do not construe the offer of the proposed testimony by Officer Petty or Officer Turner solely as “an offer to impeach the defendant’s own witness of Officer Parker, who was called and vouched for by the defendant.” Without going into the question of whether the credibility of Officer Parker, who had been called as an adverse witness by the defendant, had been vouched for by the defendant, the testimony sought from the absent witnesses Petty and Turner was not merely to impeach the testimony of Officer Parker, for, if it had been favorable to the defendant in weakening testimony of the eyewitnesses as to the identity of the defendant as the robber, it would for that reason alone have been admissible testimony.
Notwithstanding our reluctance to agree with the trial judge’s indicated reasons for not allowing the defendant more time to produce the absent witness or witnesses, we are unwilling to reverse the case at this time. It should be remanded to the trial court for a hearing at which defendant is given an opportunity to show, if he can, by either Officer Petty or by Officer Turner, what he proposed to show by either of them and was prevented from doing so by reason of his not being allowed sufficient time to have them in court. The parties shall have due notice of such hearing, and the trial judge is invited to make any comments that he cares to make as to whether the testimony presented would have constituted competent, relevant and material testimony favorable to defendant if it had been presented on the trial of the case. The trial court shall make a return to this order of remandment with a copy thereof to each of the parties. Either party aggrieved thereby will have twenty-eight days within which to file a brief and the opposing party fourteen days thereafter to file a reply brief.
The target of appellant’s third contention for a reversal is the denial by the court of defendant’s motion for a new trial, which with its preceding context is found during the part of the cross-examination of defendant as follows:
“Q. Did you plead guilty downstairs in Judge Snodgrass’ court back on October 13, 1977, of the offense of grand larceny?
“A. That is right.
“Q. And you had a lawyer, didn’t you?
“A. That is right.
“Q. That is what you are saying here. You plead guilty on that offense didn’t you?
“A. Yes, I did it.
*117 “Q. That was right after the state of Alabama dropped the offense of buying, receiving, concealing stolen property; is that right?
“A. That is right, because I pleaded for which I had did.
“MS. TESNEY: Your honor, I object to that.
“THE COURT: Sustained.
“MS. TESNEY: I move for a mistrial on the grounds that it inadmissibly suggests that there have been charges that he has previously instructed not to.
“THE COURT: On that ground I deny.”
As we view the situation, the State was at least on the edge of dangerous water in the quoted interrogation of the defendant, in not showing merely that he had been convicted of grand larceny. A motion in li-mine had been filed by the defendant and ruled upon orally by the court after a hearing thereon prior to the commencement of the trial “to prevent the State” from making known to the jury in any way the following:
“Any misdemeanor convictions of the Defendant, any convictions prior to March 1, 1973, or any other testimony designed to or having the effect of making known to the jury that the Defendant had any convictions for, or otherwise charged with, crimes other than those involving moral turpitude or those convictions in excess of ten years.”
Neither the motion nor the colloquy among the trial judge and counsel for the respective parties at the time of the hearing of the motion is as clear to us as we would like for it to be as to definite limits placed upon the State in any of its references to previous convictions or the like of the defendant. At any rate, we conclude that the transcript fails to show sufficient reason, and fails to support any valid ground asserted by defendant's counsel, for granting the motion for a mistrial. The trial court was not in error in overruling the motion.
The fourth and last issue presented by appellant is as to whether the trial court erred in refusing defendant’s requested written “charges 21, 41, 42, and 43.” All four charges would have permitted some verdict for a lesser included offense of robbery in the third degree as expressly charged in the indictment. According to the undisputed evidence, the defendant was either guilty or not guilty of that charge. The court was not in error in refusing any of the charges made the basis of appellant’s fourth contention for a reversal.
The cause should be remanded with directions as hereinabove set forth.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REMANDED WITH DIRECTIONS.
All the Judges concur.